FILED

JAN 17 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. 06-02 |
| v. | : | |
| MANUEL LAGMAY, | : | |
| Defendant. | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, defendant, Manuel Lagmay, under penalty of perjury, agrees and stipulates to the following facts in connection with his plea of guilty as follows:

### Background

At all times relevant to this offense, Defendant Manuel R. Lagmay ("Lagmay") was the president, chief executive officer, director, and shareholder of International Health Care Services, Inc. ("IHSI"), otherwise known as HealthForce One, a corporation with its principal place of business prior to on or about September 2004, at 1108 K Street, N.W., Washington, D.C. IHSI is a health care agency supplying temporary nurses to hospitals in and around the District of Columbia and elsewhere, and a recruiting service for hospitals seeking to find qualified nurses overseas to ease the nursing shortage in the area.

Accountant is an alien who was sponsored and brought by defendant Lagmay from the Phillippines to the United States to assist in the books and record-keeping of IHSI. At Lagmay's direction, Accountant maintained the accounting records of IHSI in QuickBooks, a common software program used to establish and maintain accounting records, including the income statement, payroll,

accounts payable, and other expenditures of a business.

Howard University is a preeminent, historically black university, established by an act of the United States Congress in 1867. The University operates a hospital within the District of Columbia, known as Howard University Hospital ("Hospital"). The Hospital participates in federal healthcare programs, including Medicare (a medical insurance program that provides health insurance for persons over the age of 65, as well as certain persons with disabilities over the age of 65, without regard to financial means or income) and Medicaid (a medical insurance program that provides health insurance for certain persons with low incomes and limited resources). In addition, the Hospital receives a percentage of its annual operating income from direct federal appropriation and approximately 30 percent of payment for contract labor comes from federal monies.

Unit Secretary was a full-time secretary for the Department of Nursing at the Hospital. As Unit Secretary for the Department of Nursing, she was responsible for submitting the time and attendance cards of all nurses employed by the Hospital in order for them to be paid. Among her duties, United Secretary verified that nurses in fact worked their shifts; approved their time cards; and recorded the time and attendance information for staff nurses into the University computer system. Upon calculation by the computer system of the nurses' hours and rate, it was Unit Secretary's responsibility to hand-deliver this printout to the accounts payable department of the Hospital, which would then issue the nurses' paychecks. In addition, Unit Secretary was responsible for verifying the number of hours temporary, or "per diem," nurses worked at the Hospital. Unit Secretary would input the information as well in order to verify invoices for payment to the nursing agencies who supplied temporary nurses. At all times relevant to this offense, Unit Secretary reported, either directly or indirectly, to the Director of Nursing.

Beginning in or about July 2000 and continuing through in or about December 2003, in the

District of Columbia and elsewhere, defendant Manuel Lagmay conspired to defraud the Hospital in excess of $320,000.

### The Scheme

As the unit secretary for the Department of Nursing, Unit Secretary was responsible for verifying the number of hours temporary, or "per diem" nurses worked at the Hospital. She would input this information into the University's system in order to verify invoices for payment to the nursing agencies who supplied temporary nurses. While Unit Secretary was in this position, defendant Lagmay solicited her to assist IHSI in obtaining a contract to staff the Hospital with temporary nurses supplied by IHSI.

In or about July 2000, defendant Lagmay offered, and Unit Secretary accepted, a sum of $3,000-$5,000 to arrange a meeting between the defendant and the Director of Nursing, her supervisor. In addition, defendant Lagmay offered, and Unit Secretary accepted, a kickback of an additional $5 for every shift an IHSI nurse worked at the Hospital if Unit Secretary assisted in the procurement of a contract. It is a federal crime to offer or receive a kickback in connection with a federal health care program. Pursuant to this secret agreement, Unit Secretary arranged the meeting and urged her supervisor to consider IHSI as a service provider. At no time did either the defendant or Unit Secretary disclose the financial arrangement between them. On or about August 24, 2000, at Unit Secretary's recommendation, the Hospital entered into a staffing agreement with IHSI. Pursuant to this agreement, IHSI submitted for and received in excess of $2,700,000.00 for claimed nurses provided to the Hospital.

From between in or about January 2001 and in or about December 2002, defendant Lagmay directed Accountant to issue checks from the accounts of IHSI to Unit Secretary as kickbacks for her services in obtaining the Hospital contract. For example, on or about May 13, 2002, Unit Secretary

received and deposited a $1,070 IHSI check drawn from its account at Bank of America for shifts worked by IHSI temporary nurses at the Hospital pursuant to the staffing agreement.

In early 2003, defendant Lagmay not only continued to pay Unit Secretary pursuant to the secret agreement above, but offered additional payments for Unit Secretary's participation in the submission of fraudulent invoices for IHSI nurses who never in fact worked the claimed shifts. Defendant Lagmay offered, and Unit Secretary accepted, approximately 40 percent of the total amount of the fraudulent invoices in exchange for Unit Secretary agreeing to process the invoices, certify them as valid, and submit them to her supervisor for payment. To effectuate this scheme, defendant Lagmay directed Accountant to generate the fraudulent invoices, with information and amounts provided by the defendant. Furthermore, defendant Lagmay directed Accountant to issue IHSI checks to Unit Secretary for her approximately 40 percent share of the fraud proceeds. In order to conceal the nature of IHSI's payments to Unit Secretary, the defendant directed Accountant erroneously to classify some of the checks to Unit Secretary as "loan payments." In fact, Unit Secretary never loaned the defendant or IHSI any amount of money, and the checks received by Unit Secretary from IHSI were entirely the proceeds of conspiracy to defraud.

Concealment

On or about April 15, 2004, defendant Lagmay and IHSI provided invoices from IHSI to the Hospital for the period September 2000 through February 2004, as well as the supporting documentation. In addition, IHSI provided a QuickBooks document entitled "IHSI's Vendor QuickReport" from April 1, 2000, through April 8, 2004, purporting to list all checks payable to Unit Secretary during that period of time. The report failed to disclose numerous checks totaling in excess of $20,000 that had in fact been issued by IHSI to Unit Secretary. Furthermore, defendant Lagmay solicited individuals, including Accountant, to erase the QuickBooks files of IHSI related

to the fraudulent invoices that Accountant had created at the defendant's direction.

                                      Respectfully submitted,

                                      KENNETH L. WAINSTEIN
                                      United States Attorney
                                        D.C. Bar Number _____

By:                  */s/*
                                        JEANNIE RHEE
                                        Assistant United States Attorney
                                        D.C. Bar # _____
                                        Fraud & Public Corruption Section
                                        555 Fourth Street, N.W., Room 5255
                                        Washington, DC 20530
                                        (202) 514-9832