UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 06-002 (GK) |
| v. | : | |
| MANUEL R. LAGMAY, | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits this memorandum in aid of the sentencing of defendant Manuel R. Lagmay.

### I. FACTUAL BACKGROUND

On January 17, 2006, the defendant pled guilty before this Court to a one-count Information charging him with conspiracy to commit health care fraud, in violation of 18 U.S.C. §371.

As set forth in greater detail in the filed Statement of Offense, which was agreed to by the defendant at the time of his plea, defendant Lagmay was at all relevant times the president, chief executive officer, director, and shareholder of International Health Care Services, Inc. ("IHSI"), otherwise known as HealthForce One. In violation of the federal laws prohibiting kickbacks in connection with a federal health care program, defendant Lagmay solicited an employee of Howard University Hospital to assist his company in obtaining a contract to staff the Hospital with temporary nurses supplied by IHSI. That employee, Maria Teves-Upshur, has also pled guilty for her participation in a conspiracy with the defendant to defraud Howard University Hospital.

In or about July 2000, defendant Lagmay offered, and Teves-Upshur accepted, a sum of $3,000-$5,000 to arrange a meeting between the defendant and the Director of Nursing, her

supervisor. In addition, defendant Lagmay offered, and Teves-Upshur accepted, a kickback of an additional $5 for every shift an IHSI nurse worked at the Hospital if Unit Secretary assisted in the procurement of a contract. Pursuant to this secret agreement, Teves-Upshur arranged the meeting and urged her supervisor to consider IHSI as a service provider. At no time did either the defendant or Teves-Upshur disclose the financial arrangement between them. On or about August 24, 2000, at Teves-Upshur's recommendation, the Hospital entered into a staffing agreement with IHSI. Pursuant to this agreement, IHSI submitted for and received in excess of $2,700,000.00 for claimed nurses provided to the Hospital.

In early 2003, defendant Lagmay not only continued to pay Teves-Upshur pursuant to the secret agreement above, but provided additional payments for her participation in the submission of fraudulent invoices for IHSI nurses who never in fact worked the claimed shifts. Defendant Lagmay kept 60 percent of the total amount of the fraudulent invoices and Teves-Upshur received 40 percent in exchange for agreeing to process the invoices, certify them as valid, and submit them to her supervisor for payment. To effectuate this scheme, defendant Lagmay directed IHSI's accountant to generate the fraudulent invoices, with information and amounts provided by the defendant.

## Concealment

On or about April 15, 2004, defendant Lagmay and IHSI provided invoices from IHSI to the Hospital for the period September 2000 through February 2004, as well as the supporting documentation. In addition, IHSI provided a QuickBooks document entitled "IHSI's Vendor QuickReport" from April 1, 2000, through April 8, 2004, purporting to list all checks payable to Teves-Upshur during that period of time. The report failed to disclose numerous checks totaling in excess of $20,000 that had in fact been issued by IHSI to Teves-Upshur. Furthermore, defendant

Lagmay solicited individuals, including IHSI's accountant to erase the QuickBooks files of IHSI related to the fraudulent invoices that his accountant had created at the defendant's direction.

## II.  UNITED STATES SENTENCING GUIDELINES AND THE IMPACT OF BOOKER

The probation officer believes, and the United States concurs, under the applicable advisory United States Sentencing Guidelines, that the defendant's total offense level is seventeen and his criminal history category I, with an attendant Guidelines range of 24 to 30 months imprisonment. PSR, at page 12, ¶ 55.  According to the Presentence Investigation Report, the defendant presently falls within Zone D of the Sentencing Table and is not eligible for probation.  Id., at page 13, ¶ 61.

There are no facts involved in the calculation of the defendant's sentence under the United States Sentencing Guidelines that were not admitted by him in his guilty plea.  Accordingly, no Sixth Amendment concerns arise in the calculation of his Guidelines sentence.  Although the Supreme Court held in United States v. Booker, 125 S. Ct. 738 (2005), that the Sentencing Guidelines are no longer mandatory, for the reasons set forth below, the government contends that the appropriate sentence of defendant in this case is one within the range of ten to sixteen months and the government recommends that the defendant be sentenced to the lower end of that range.

In Booker, the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violated the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004) and consequently invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1).  Booker, 125 S. Ct. at 764.  The remaining statutory scheme, set forth in Title 18, United States Code, Section 3553(a), states that a court should consider the following factors in imposing a sentence on a criminal defendant:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence, as reflected in a) the seriousness of the offense and need for just punishment and respect for law; b) promotion of general deterrence; c) protection of the public; and d) providing for educational, medical and other needs of the defendant;

(3) the types of possible sentences;

(4) the range established for the conduct under the Guidelines;

(5) the policies promulgated by the Sentencing Commission;

(6) ways to fashion a sentence that promote uniformity in sentencing for like offenses and offenders; and

(7) victim restitution.

Although it invalidated the mandatory obligation of the Sentencing Guidelines, the Booker Court importantly and expressly upheld the remainder of the Guidelines as an appropriate benchmark for courts to look to in determining a reasonable sentence for the defendant before it. Booker, 125 S. Ct at 767 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Indeed, the statutory obligation remains for a court wishing to impose a sentence outside the applicable range to state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that prescribed by the Guidelines. See 18 U.S.C. § 3554(c)(2). The sentence will then be subject to review by a Court of Appeals for "reasonableness." Booker, 125 S. Ct. at 764-66.

Accordingly, a sentence within the Guidelines will, in most, if not all, cases be inherently reasonable and will have adequately taken into account each of the factors enumerated in Section

3553(a). Indeed, the Sentencing Commission formulated the Guidelines only after canvassing prior sentencing practices and identifying and assigning weights to all of the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. 994(m) (requiring the Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). In light of the Booker Court's continued reliance on the Guidelines, and its history in the calculation of the applicable ranges, the government contends that, absent unusual circumstances under one of the other Section 3553 factors, a defendant's sentence should fall within the Guidelines range as determined by this Court.

### III. ADDITIONAL SENTENCING FACTORS UNDER SECTION 3553(a)

A consideration of the additional sentencing factors under Section 3553(a) supports the conclusion that a sentence within the Guidelines range is appropriate in this case. As provided in greater detail in the Presentence Investigation Report, the defendant had all of the benefits of education, stability, and supportive family. Indeed, armed with a nursing degree, the defendant built a nursing and recruitment business that he has operated, in one form or another, since 1987. PSR, at page 8, ¶ 37. There is no documentation of mental or emotional problems, substance abuse or excessive financial strain. PSR, at pages 9-11, ¶ ¶ 42-43, 52-53. Unlike many defendants who come before this Court for sentencing, the defendant was prospering at the time he committed the offense; he ran his own successful business; made plenty of money (the defendant self-reported an

annual salary of approximately $100,000) and lived in a very nice home with his wife and child. PSR, page 9, 11, ¶¶ 39, 47. Greed, and only greed, is what motivated the defendant to commit the offense that he did. The defendant's objection to the Presentence Report, claiming that it was Teves-Upshur who approached him and "made suggestions that he submit fraudulent invoices," certainly in no way mitigates the defendant's culpability. Moreover, the defendant's characterization of events is belied by the fact that he kept the majority share of the illicit proceeds. If it really was at the instigation and insistence of Teves-Upshur, the division of profits would have reflected the true role of each participant in the offense. However, for doing the lion's share of the work in approving, submitting, and processing the fraudulent invoices, Teves-Upshur received only the minority share of proceeds. The monetary division strongly suggests the relative position and authority of each participant. There are no mitigating or exacerbating circumstances, as set forth in the Presentence Investigation Report, to take into account in this case.

In light of the defendant's personal circumstances, the nature and seriousness of the offense, the range of 24 to 30 months imprisonment is a reasonable and appropriate sentence in this case – one that takes into account all of the factors enumerated in Section 3553(a). As this Court is aware, that range, which reflects compiled data on sentencing over time and geography, properly incorporates the need to promote uniformity in sentencing for comparable offenses and comparably

situated offenders. For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence of incarceration at the lower end of the guidelines range of 24 to 30 months as set forth above, in the Presentence Report, and in the plea agreement.

        Respectfully submitted,

        KENNETH C. WAINSTEIN
        UNITED STATES ATTORNEY
        BAR NO. 451058


By:   _____
       JEANNIE S. RHEE
       ASSISTANT U.S. ATTORNEY
       BAR NO. 464127
       555 4th Street, N.W.
       Washington, D.C. 20530
       (202) 514-9832